Morning, Your Honors. May it please the Court. My name is Sterling LaBeouf, and I represent the appellant, Donald Dixon. Your Honors, we are here today to ask the Court to remand this case to the lower court for reconsideration of equitable tolling on a complete record, including a declaration from Mr. Dixon's doctor. Now, I know the Court's familiar with the briefs and the factual background to the case, so I'd like to just jump right into my first point, which is the lower court's misinterpretation of Rule 35e1 of its Rules of Practice and Procedure and this Court's plenary review of that interpretation. Your Honors, Rule 35e1 is set out on page 5 of the addendum to the government's brief, and it provides that a motion for reconsideration shall state the points of law or fact that the party believes the Court has overlooked or misunderstood. Those are the key terms, overlooked or misunderstood. Just as a matter of common usage, Your Honors, when someone misunderstands something, sometimes we have to add additional context to show them what they've misunderstood. For example, imagine that I'm from the country of Georgia. If I simply tell someone that I'm from Georgia, and they respond that they love Atlanta, then I might reply by telling them that I'm actually from the country in Central Asia. In doing that, I've added some additional context, some additional facts that I've corrected a misunderstanding. And that's exactly what Mr. Dixon was trying to do here. In the initial letter from his doctor, which was a four-sentence letter, the doctor explained that Mr. Dixon was unable to attend to or focus on the appeal process. In the supplemental declaration... Your problem is that the Veterans Court has interpreted its rule as not allowing to bring you to bring in new evidence on reconsideration, right? And that's... Well, Your Honor, I don't think that that's a reasonable interpretation of the rule, but I also believe that this Court has de novo review over the Court's interpretation of the rule. In the Durr case, for example, that we cite in our brief, that had to do with the contents of a notice of appeal under Rule 3 of the Court's Rules of Practice. We can review de novo, the rule? Yes, I think so, Your Honor. And that's what this Court did in Durr. There was no indication in that opinion that the Court gave any deference to the Court's interpretation of that rule. But we also didn't say that they didn't have any discretion, did we? Yes, that's correct, Your Honor. And I think the distinction here is that this kind of a rule goes to, or this kind of an interpretation that the Court has announced, goes to the Court's ability to hear the merits of a claim, the ability of a veteran to take an appeal from the BVA to the Court. So it's very different than the kind of rule in cases where this Court has given deference. For example, in the Bastion case, the rule there was a rule prohibiting citations to the BVA. That kind of a claim processing or procedural rule is very different from a rule like this that has positive consequences. And it goes to the heart of whether the Court can hear a claim or not. Well, why is it unreasonable to interpret the rule as not allowing new evidence to be brought in on reconsideration? Yes, Your Honor, because the term, the rule says nothing about what evidence can be presented on a that the litigant believes the Court misunderstood. And just as a matter of common usage, you can show things that have been misunderstood by providing additional context, additional facts. The Veterans Court has even recognized that. What about another context? I mean, in the district court, do we have any case law on whether you can in new evidence on a motion for reconsideration, say, of a summary judgment motion or something like that? Could you bring in new affidavits at that point? Or would the district court say, no, you had the opportunity to make your record earlier, and you can argue about whether that record was adequate on reconsideration, but you can't bring in new evidence. Has this issue been addressed in the district court? Well, the only cases that we found addressing this issue are two cases in which the Veterans Court did allow additional evidence on reconsideration. And those are the McCreary cases and the Ashley case. In the McCreary case, for example, the veteran on the initial motion, he was seeking equitable tolling based on extraordinary circumstances. His house had been hit by a hurricane. He said that he had, quote, misplaced his papers related to his appeal during the hurricane. On the motion for reconsideration, the Veterans Court allowed him to submit a declaration explaining just what he meant by the term misplaced. It allowed him to explain that what he meant was the documents related to the appeal were in a room that was That's exactly what Mr. Dixon was trying to do here. His doctor in the initial letter said that he was unable to attend or focus on the appeal process. He wanted to, well, in the court's order denying equitable tolling, the court said that it accepted the doctor's statement, but that Mr. Dixon hadn't shown that his failure to file was the direct result of his illnesses. So on reconsideration, we wanted to present a declaration that simply explained the facts, what the doctor meant was that, you know, Mr. Dixon's illnesses were directly resulted in his untimely appeal. So your argument is that there's cases by the Veterans Court like McCreary and Ashley. Exactly, Your Honor. Where there's examples where the Veterans Court didn't entertain additional evidence at the reconsideration level. Exactly, Your Honor. So is it then your argument that perhaps the Veterans Court incorrectly interpreted its rule to mean that they can never consider new evidence at the recon level? Exactly, Your Honor. I think the court basically set out a blanket ban on any evidence being presented on a motion for reconsideration. But nevertheless, it would still be within their discretion whether to entertain that new evidence. Exactly, Your Honor. That's how the court has dealt with it successfully in the past. And in the McCreary case, in the Ashley case, it looked at the particular evidence that the litigant wanted to present, and it decided whether that was appropriate. What would be the limiting principle? I think the limiting principle, Your Honor, is... We wouldn't want two-stage litigations, right? Someone puts in their record and their arguments, and then they lose, and then they say, oh, we lost. That didn't work. Let's try something new. And all the time, you know, courts would have to accept at the reconsideration level new evidence, new theories, new arguments. That wouldn't be right, right? Exactly, Your Honor. And I agree. I think that the limiting principle is that the evidence has to clarify prior evidence. And, you know, that... would give you an awful lot of opportunity on reconsideration to bring in new stuff. Well, Your Honor, that may be so, but Veterans Court, you know, as I said, it would still be within the court's discretion on a case-by-case basis. Well, that's... They're bringing in a lot of new stuff. They're basically explaining what he said the first time. He said he couldn't bring the appeal. He was on his deathbed, so forth. The doctor said he couldn't bring the appeal. That wasn't specific enough, apparently. Exactly, Your Honor. I mean... I mean, so they're bringing in a little more detail of what he meant the first time. Exactly. When he filed a pro se. Right. So I don't see that this is some wide-open door. They're just amplifying the statement. It shouldn't have needed amplification. You're right, Your Honor. And yes, the facts of this case, I think, are a perfect illustration. Well, and your argument is that this is like McCreary in that respect, right? Exactly, Your Honor. Which is a much narrower argument than the one that you're making. Well, I don't think so, Your Honor. I think... You don't think it's narrower? I think that McCreary is narrower. No, the argument that what the Veterans Court did here is inconsistent with its decision in McCreary is a narrower argument than the contention that you can bring in new evidence without limitation or that you can bring in new evidence whenever it's necessary to clarify or some of the other things that you argued, which would allow a broad window for bringing in new evidence on reconsideration. Right, Your Honor. No, to be clear, we don't think there should be, you know, new evidence that can be brought in. New meaning unrelated to anything discussed in the prior filing. That's not at all what we're proposing. We're proposing a rule that's consistent with what the Veterans Court applied in McCreary and in Ashley. That's what I mean by clarifying. And I think the Veterans Court has successfully been able to limit the circumstances in which new evidence can be presented in these past cases. I think it just got it wrong here. Mr. Dixon, his supplemental evidence clearly fits within the framework established by McCreary and Ashley. He's trying to explain some terms that were used by the doctor in this four-sentence letter that was clearly pretty hastily done. It's on page 137 of the appendix, if Your Honor would like to take a look. But, you know, especially in the Veterans context, I think that this interpretation makes even more sense. Most veterans are unrepresented before the Veterans Court. Almost all of them are. And so I don't think you're going to have a problem with, you know, opening up the floodgates to this additional evidence. Because, you know, the vast majority of veterans are not going to, for one, have counsel on reconsideration. And in any event, the pro-veteran canon of interpretation really suggests that if there's any ambiguity here, that the court choose the interpretation that's most beneficial to veterans. And here I think the only context you're going to see litigants trying to introduce new evidence is equitable tolling. The only context where it makes sense. Well, I'm not sure that that's the only situation in which they're going to try to do it is equitable tolling. I think that's right, Your Honor, because this is very different than the merits of an appeal. You don't have a static appellate record, you know, that's been transmitted from the court until after the equitable tolling issue has been resolved. The cases cited by the government all deal with the merits of an appeal. And in that context, it does make sense to say, no, you can't supplement this record that's been sent out from the court below. And, you know, as the Golan case cited by the government said, the appellate court has no fact-finding function. And that is true, except in the equitable tolling context. We don't have to decide today whether you are going to be permitted to introduce new evidence in a recon motion, right? The only thing that's really in front of us, you know, you have to get through another hurdle first. And what we have to decide today is whether it was correct to deny the extension motion for the reasons provided by the Veterans Court. That's all we have in front of us. That's exactly right, Your Honor. Yes. Is the interpretation of Rule 35. That was the only basis for the extension motion. And so we would just ask that the court reverse the order on the extension motion and give the instructions we've sat out in our brief, which is, in this tradition, have a reasonable opportunity to obtain his declaration and his claim file. So you take the extra step and say, not only vacate the order because the grounds for the denial was a misinterpretation of the rule, but you'd have us go an extra step and say, and we order that you grant the extension motion because, what, it's good cause? We would say there's good cause? I don't think the court has to do that. I think the court could do that. The facts are all undisputed related to the extension of time. And the standard is extraordinary circumstances. And I think if there are ever... Yeah. Do we, as this court, have the authority to decide whether these are extraordinary circumstances? I think the court does have that authority, Your Honor. My understanding was this court's ability to review Veterans Court's decisions is somewhat limited. It is limited in that the court can't review disputed facts and make decisions about those facts. But here, the facts are all undisputed. As this court has said in Durer, in the Simraj case, when the facts are undisputed, the court can decide legal questions in the context of those undisputed facts. The VA hasn't disputed that at the 11th hour, a VA attorney blocked Mr. Dixon's doctor of truthful declaration on the basis of the attorney's misreading of his agency's own regulation. Have you been able to get that declaration now? No, we haven't, Your Honor. We haven't pursued it since all of this happened because we obviously don't know what the outcome was. Are you satisfied with having accessed and copied whatever file materials there are in Mr. Dixon's file? We would be... You still haven't gotten that? We still have not received the entire claim file. We've received portions that we were allowed to select during a limited period of time when we were allowed to visit the VA's regional office. But we have not received the entire file. So we would like the file and we would also like the declaration from Mr. Dixon's doctor. This court's opinion in Barrett v. Nicholson said that Mr. Dixon is entitled to that. He's entitled to obtain declarations from VA medical personnel to support his request for equitable tolling. And that opinion also said that if... But we're dealing with the scope of your ability to do that on reconsideration. Yes. It's a different question. And to say that you could redo the whole thing is a pretty aggressive step in terms of what's normal on reconsideration. Well, Your Honor, I agree it's a different context. But nothing in Barrett limits the scope of that opinion to initial motions. The rationale for Barrett is that the VA has unequal access to evidence on the issue of equitable tolling. It controls VA medical personnel. It has the veteran's claims file. And I think as the facts here show, that situation persists on a motion for reconsideration. You've gone fairly far over here. We'll give you two minutes for a bottle. Why don't we hear from the government? Thank you, Your Honor. Good morning, and may it please the Court. The Veterans Court did not abuse its discretion in denying Mr. Dixon's second... If we were to conclude that what the Veterans Court did here was inconsistent with McCrary, would that be a ground for reversing the decision or vacating it? No, not necessarily, Your Honor. Why not? For several reasons. First, the Veterans Court has its own Rule 2, which permits it to, in its discretion, deviate or suspend its other rules in particular cases. So that there may be and are one or two examples of times when the Veterans Court has considered some new evidence on reconsideration. It does not mean that its interpretation that as a general rule, new evidence should not be allowed on reconsideration. Was Rule 2 invoked by the Veterans Court in McCrary and Ashley? It was not explicitly invoked, but Ashley has some very instructive language. In Ashley, the veteran had submitted a prior to the motion for reconsideration, had submitted a declaration regarding VA procedures for mailing notices. On reconsideration, the veteran backed away, disavowed the prior statement, and VA put forth evidence explaining that that prior statement was incorrect. The court, after admonishing both parties for waiting until this late stage to give it new evidence, said that under ordinary circumstances, the Secretary's motion for reconsideration would have been denied. But it went on to say this case no longer presents ordinary circumstances. And said that given both parties backing away from the initial factual statement upon which the court had relied, the court did go on and consider that evidence on reconsideration. So that's not necessarily invoking Rule 2. And secondly, that's also suggesting that the Veterans Court, at least in certain instances, recognizes that it has the authority to appreciate that a certain fact pattern might not be the ordinary circumstance that merits permitting new evidence to be considered at the recon level. That's right. We agree with both of those. And maybe that's possible here for Mr. Dixon as well. But we don't know because the Veterans Court cut it off prematurely by denying the extension motion. No, we – yes, the Veterans Court had the discretion that it could have departed from the exercise of the 410 Rule 2. But then what you're saying is it doesn't have to exercise it. But what the hypothetical I was asking about is suppose that they have exercised it in the past in identical circumstances. Let's assume that we were to conclude that McCrary is exactly the same as this case. Could they then depart from McCrary here? Yes, it would require the court to – They don't have to be consistent? Well, obviously, we generally want consistency from our court. But if we assume that the facts were exactly identical, another hurricane, another dispute over misplaced papers, then yes, the Veterans Court should reach the same conclusion. And I think arguably it would be an abuse of discretion had it not. And we could reverse them for not following their earlier precedent. And would – yes, and then would remand for an application of this other precedent to the fact that the case – So what's the difference between those cases and this case? Pardon me? What's the difference between those cases and this case? Well, there's numerous differences. We have to accept what he said in the doctor, that he was incapacitated. He couldn't file a notice, et cetera, et cetera. Right. What's the difference between that and the hurricane blowing the papers out the window? Okay. In McCrary, McCrary cited Ashley, which we've already discussed. McCrary, the opinion began by recognizing that when there have been times when this court has acknowledged or recognized a new basis upon which equitable tolling can be permitted, then the Veterans Court has allowed veterans to submit evidence demonstrating that they meet that new standard. That's how the opinion started. Then the opinion goes on and allowed Mr. – rather, the Veterans Court ordered Mr. McCrary to submit additional evidence in support of his motion for reconsideration. And then we had this dispute about what he'd meant by misplaced papers. So why isn't McCrary like this in the sense that we have a statement that was made in the earlier submission, which needs to be clarified? Why isn't that like McCrary? Because we don't have that situation. This is not a situation where the doctor made a statement that the Veterans Court somehow misunderstood and that it is now being clarified. In this case, Mr. McCrary is really trying to change the record. Mr. Dixon submitted medical – a note from his doctor, medical records, VA treatment records, and his own statement. The Veterans Court considered all of that, made a ruling that he had not met the requirements for equitable tolling. Let's focus on the new declaration that they're trying to get from the doctor, which clarifies that he's saying that they met the direct result or whatever it is standard. Right? That part of what they're seeking to do, why isn't that very similar to what happened in McCrary, where there was an inartful use of a term and they wanted to explain it, and here the doctor is doing the same thing. He's explaining that what he said before, the facts that he brought in before, showed the necessary directness. Because the – by Mr. Dixon's own description, the second declaration, the way he describes it, notably at page 13 of his opening brief, he says it adds nothing to what had already been mentioned and clarifies a position that was already articulated. The Veterans Court considered that position and found that it didn't meet the requisite standard for equitable tolling. Mr. Dixon's argument that the Veterans Court somehow found against him simply because the magic words, direct result, is a false premise. If you look at the Veterans Court's decision on equitable tolling, which begins at page 159 of the record, the court applied the standard. But the second declaration goes a step further. It's not just adding the direct result language. It also has an additional change that Mr. Dixon does not acknowledge in his briefing, the – and that is a change to the alleged time period during which Mr. Dixon was ill. The original doctor's note said that that period of illness, physical and mental, extended through August of 2008. The Veterans Court then found against Mr. Dixon, saying, well, because he actually filed his notice of appearance during that time period, albeit late, that was inconsistent. I'm a little confused. It sounds like the Veterans Court is already making preliminary decisions on whether these possible proposed pieces of evidence will actually be permitted to be entertained. And this is just an extension motion we're talking about. We're not even at the question of whether or not at the recon level should the Veterans Court accept the evidence. We don't even know if they're going to present evidence. We know that they're trying to get the actual record file. We know they're trying to get access to Mr. Dixon's doctor. And maybe they will submit evidence. Maybe they won't. Maybe they'll just be able to provide you a memorandum of law better explaining what Mr. Dixon pro se was not quite able to do to the Veterans Court satisfaction in the first instance. So the point was, I think, is that Mr. Dixon was just trying to get his file. And he now had a lawyer. And he was trying to figure out what to do on recon. But that all got prematurely cut off or cut off by the Veterans Court without even giving them an opportunity to figure out what they, if anything, they were going to do on recon. Well, Your Honor, we disagree with that. Because Mr. Dixon certainly had an opportunity before the Veterans Court. As Your Honor points out, the procedural posture of this case is very important. Mr. Dixon had a full and fair hearing on the merits before the Veterans Court. Now we're on motions for extensions of time on reconsideration. And importantly, the Veterans Court, when denying the second motion for an extension of time, had before it declarations from Mr. Dixon's counsel, counsel's legal assistant, as well as the draft declaration that they wanted the doctor to sign. The Veterans Court had all of that information before it and made, exercised its discretion, which this court has recognized it has in its authority to apply its own rules. And did they consider the blockage by the VA of the doctor signing this document and the blockage of the VA of giving them the file? Yes, now, and we... That's all part of this equitable consideration, isn't it? That was all before the Veterans Court. Doesn't that suggest that it was of gross abuse of discretion? No, Your Honor. Because, for several reasons. First, given the Veterans Court's reasonable interpretation of its own rule as limiting reconsideration to the record at the time of the challenged decision, this other evidence arguably wasn't even relevant. I thought you conceded that they actually misstated the law because it isn't an absolute rule under their own construction. There are some circumstances in which you can bring in new evidence, right? And they didn't take account of that. Instead, rather than considering all the equities here, the Veterans Court strictly decided that you can never add and augment the record on recon. And for that reason alone, it denied the extension motion without considering all the blockage issues that Judge Mayer mentioned. No, Your Honor. The Veterans Court had before it. Mr. Dixon aired all of these issues before the Veterans Court. His counsel, for example, spelled all of this out in a declaration. The Veterans Court had that before it, and the law presumes that the Veterans Court considered the information before it. In addition, Mr. Dixon filed a motion for reconsideration on the denial of a motion for extension. They may have considered the information, but they articulated a principle, an interpretation of the rule, which is directly inconsistent with what they have said before when they interpreted it. No, Your Honor. How can it be that their statement of the law, of what the rule requires, is consistent with those prior cases? Because, Your Honor, the Veterans Court, and again, particularly with that language that I read in Ashley, went out of its way to say that those were not ordinary circumstances. Well, but there's no recognition in the decision here that extraordinary circumstances would permit the submission of new evidence. And there was no need for the court to recognize that. When the court always has, under its rules, the authority to depart from its general statements of what it's going to do in ordinary cases, it had the authority to depart from its interpretation here of Rule 35. It didn't do so. But even if this court were to find that the Veterans Court erred in its interpretation of Rule 35, Mr. Dixon has failed to demonstrate or even really spell out any real allegations of how that error was prejudicial to him or harmful to him. And for that additional reason, even if the court finds that there's some sort of error, it should not reverse and remand in this particular case. Well, I think the error would be that the Veterans Court didn't actually evaluate whether, given all the equities here, there was good cause to grant the second extension of time. I think that's the error that they're suggesting. But we don't have any evidence to suggest the Veterans Court failed to consider the equities. I mean, the Veterans Court would have been well within its rights to just say, extraordinary circumstances are the standard, motion denied, no explanation. The court is, there's no obligation on the court to spell out. That's not what they said. That's the problem. I mean, in particular, where we have this rule of law and jurisdiction, we have to look at what they say. And if they articulated a principle, which they say governs the case, which is wrong, don't we have to send it back? No, Your Honor. Assuming that this is a rule of law jurisdiction situation, the second prong is that the claimant has a burden to demonstrate that the error was outcome determinative. And while he said, well, yes, I wanted to dig through the claims file, and maybe I would have found something, maybe I wouldn't have found something. And with respect to the doctor's note, the theory he puts forth is, well, the doctor was going to more directly say this was a direct result, that the untimely filing was a direct result. Well, that's a false premise. That's based on a false premise that the Veterans Court denied the equitable tolling motion simply because it failed to use this magic language. So even if we're in the rule of law jurisdiction area, Mr. Dixon has failed to carry his burden of showing some kind of outcome determinative error. Rather, having had the benefit of the Veterans Court decision denying equitable tolling, having reviewed where the court found the evidence lacking, he now seeks to change the record, change the dates during which he was alleged to have been too ill to file, and try to get that underlying merits decision overturned. And the court was not abusing its discretion to decline allowing that happen in this case. Please help me with something. I'm trying to understand this area of the law on equitable tolling. Is it the Veterans Court's conception of making an equitable tolling claim that the injury or illness has to be, or the delay has to be a direct result from the veteran's injury or illness? Is that the standard? That is the standard. And here, I don't know. Based on the record, one could read the doctor saying directly the delay was due to Mr. Dixon's illnesses and injuries. And what it looked like, arguably, is that the Veterans Court said it wasn't established that it was a direct result. That is what the Veterans Court has said. And so now, I guess what Mr. Dixon's position is, he's trying to clarify it simply to say, it sounds like the Veterans Court is really caught up in the words direct result. Well, now that the doctor can say that too, because it's simply entirely consistent with what the doctor had said before. That is what Mr. Dixon's saying. But if you look at the Veterans Court's decision on equitable tolling, particularly page 160 of the record, you can see that the evidence was not found lacking because there was no magic statement direct result. The Veterans Court instead analyzed the note from Mr. Dixon's doctor, which said he was too ill to focus on his appeal through August of 2008. And the court said, well, Mr. Dixon, in fact, filed a notice of appeal during that same time period. And quoting this court's standard for equitable tolling, which is, it's a very high standard that mental illness renders the appellant incapable of deliberate decision making or handling his own affairs. Well, he wasn't capable of doing it during the time before it was due. He dragged himself off his bed to get it in after it was late. That's right. But, I mean, is that a reason to condemn it? I apologize. It's certainly a sympathetic situation. But the Veterans Court, applying the law to the facts, which is not reviewable by this court, said the fact that he got that notice of appeal in, albeit late and albeit suffering from these mental and physical illnesses, just did not rise to that level of being unable to handle one's own affairs in society. Now, on reconsideration, Mr. Dixon wants to have the doctor change the time period during which Mr. Dixon was allegedly too ill to handle his own affairs to directly respond and provide a workaround for the Veterans Court's reasoning. And that is taking the purposes of the motion for reconsideration too far. It's re-arguing the case anew after Mr. Dixon had an opportunity to be heard and was heard. For these reasons, we ask the court to affirm the decision below. Thank you, Ms. Goodman. Mr. LeBeouf, you have two minutes. Your Honors, Mr. Dixon's doctor wasn't trying to bait and switch the court. This was Mr. Dixon's doctor of 12 years. Yes, he wanted to clarify the time period during which Mr. Dixon was ill. And he wanted to make clear that when he meant by his earlier statement was that Mr. Dixon's directly resulted in his untimely appeal. Also, as the court correctly noted, in Ashley McCreary, the court did not cite Rule 2 of the Veterans Court's rules allowing the court to suspend its rules. In fact, in McCreary, the court explained exactly the basis of its ruling. It said that it was satisfied that the veteran had shown a point of fact that the court had misunderstood. It's the exact same situation here, Your Honors. There's no difference. And so for the court to announce this bright line rule in its order saying that there can never be any evidence presented on motions for reconsideration, that's just inconsistent with the court's precedent. And finally, on the harmless error point, this court's rule of law jurisdiction limits its ability to decide harmless error. In cases where the relevant facts are disputed, the court said that in the Samaraj case cited in our brief. And here the facts are disputed. We believe that this declaration would make a huge difference. The government obviously disputes that. We think once the court considers the declaration and perhaps any evidence in the claim file, which we don't know what might be in there either, then we think the court is likely to grant Mr. Dixon equitable tolling. So with that, Your Honors, we'd like to rest on our briefs. Thank you. Okay. Thank you. You performed, you argued this case pro bono? Yes, Your Honor. Does the court thank you for your service? Thank you. Thank both counsel.